[Cases cited under this title will be found arranged in alphabetical order under the names of the vessels; e. g. "The Ship Sabioncello. See Sabioncello."]

---

## Case No. 12,790.

### SHIPLEY v. THOMPSON.

[2 Balt. Law Tran~ 244, 300.]

Circuit Court, D. Mary.....d.　April 21, 1869.

WAR — RECOVERY OF MONEY PAID FOR THE RELEASE OF CAPTURED PROPERTY.

James Mackubbin and Thomas Donaldson, for plaintiff.

R. J. Brent and Wm. Meade Addison, for defendant.

Before GILES, District Judge.

This is an action of assumpsit to recover $400 paid by [Joshua N. Shipley] to obtain the release of horses levied upon under a military order of Gen. Wallace, in order to indemnify [John W.] Thompson for the loss of a horse taken from him by Confederate soldiers in September, 1864. Thompson represented to Gen. Wallace that his horse had been taken by a son of Shipley; and applied to him for protection. On the witness stand he admitted that he received the money levied, but denied that he requested Gen. Wallace to issue the particular order offered in evidence, for a levy on plaintiff's property in order to indemnify himself. On the other hand, witnesses on the part of the plaintiff proved admissions of Thompson that he had instigated the levy, also that he had become satisfied that his horse had not been taken by young Shipley, and that the levy was wrongly made.

The plaintiff's counsel offered prayers to the effect that if the property of the plaintiff was levied upon and taken possession of by force, under a military order, and that he was obliged to pay the money to obtain the release of his property, and that the amount was levied at the suggestion of Thompson and for his benefit, and that the money of Shipley was paid over to him in accordance with the order, then the plaintiff is entitled to recover.

The defendant relies upon the military order of General Wallace as a complete defence; but also insists that the action is barred, because not being brought within two years, the limitation fixed by the 7th section of the act of congress of March 3, 1863. There is no plea of limitation, but the defence is made under the general issue.

By the consent of the counsel the further consideration of the case was postponed until Wednesday, the 21st [of April], when the law points will be argued.

Verdict for the defendant.

---

## Case No. 12,791.

### In re SHIPMAN.

[2 Hughes, 227; [1] 14 N. B. R. 570.]

Circuit Court, W. D. North Carolina.　Oct., 1875.

BANKRUPTCY—EXEMPTIONS—PRIOR JUDGMENTS.

1. A bankrupt against whom judgments were rendered, before his bankruptcy, upon debts contracted prior to the adoption of the constitution of North Carolina, is not entitled to his homestead exemption under the act of congress of March 3, 1873 [17 Stat. 577], as against such judgments.

[Cited in Re Martin, Case No. 9,152.]

2. When the homestead exemption of such bankrupt has been allotted, the judgment creditors are entitled to have such allotment set aside, and their judgment liens enforced.

In bankruptcy.

BOND, Circuit Judge. This is a motion on the part of creditors to set aside an application for the allowance of a homestead exemption out of property incumbered by judgments upon debts created antecedent to the adoption of the constitution of North Carolina, which provides for that exemption. It seems to me that this application is similar to that in Gunn v. Barry, 15 Wall. [82 U. S.] 610, which was made under a like provision in the constitution of Georgia, and which the supreme court declared with some emphasis could not be allowed; and it is precisely the Case of Dillard [Case No. 3,912], decided in the Eastern district of Virginia. The act of congress of March 3, 1873, which was passed, as is maintained at bar, to overrule the decision of Gunn v. Barry [supra], and to make the homestead exemption paramount to the liens of antecedent judgments, was, by the same court, Chief Justice Waite delivering the opinion, in Deckert's Case [Case No. 3,728], declared to be unconstitutional. The application on the part of the bankrupt must be refused, and the motion to set aside granted.

---

## Case No. 12,792.

### In re SHIPPING COM'R OF PORT OF NEW YORK.

[13 Blatchf. 339.] [2]

Circuit Court, S. D. New York.　May 11, 1876.

SHIPPING COMMISSIONERS — FEES — CLERK HIRE—OFFICE EXPENSES.

Under the act of June 7, 1872, (17 Stat. 262,) authorizing the appointment of shipping commissioners, (now title 53 of the Revised Statutes,) although it is provided that "the salary, fees and emoluments" of a commissioner shall not be more than $5,000 per annum, and that "any additional fees shall be paid into the treasury of the United States," and that the com-

---

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

[2] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

missioner may engage clerks "at his own proper cost," and that he shall lease, rent or procure premises "at his own cost," yet the necessary and proper expenses of his office for clerk hire, and rent of premises, and other matters are first to come out of the fees he receives, and then he may retain, as his emolument, out of such fees, $5,000 per annum, and then any of the fees which remain are to be paid into the treasury.

[Cited in Re Accounts of Shipping Commissioner of Port of New York, Case No. 12,-793; U. S. v. Reed, 9 C. C. A. 563, 61 Fed. 415.]

George Bliss, Dist. Atty., for the United States.

Erastus C. Benedict and Robert D. Benedict, for the shipping commissioner.

BLATCHFORD, District Judge. A reference having been made by the court to one of the masters thereof to examine and pass the accounts of the shipping commissioner for the port of New York, and to report to the court in reference thereto, he reports that the said shipping commissioner has rendered accounts of the receipts and expenditures of his office from August 8th, 1872, to January 1st, 1876, duly verified, and which are in great detail and comprise a vast number of items, each item of disbursement being accompanied by its corresponding voucher; that it appears, from such accounts, that the receipts of the shipping commissioner's office were, from August 8th, 1872, to January 1st, 1873, $20,303 50—from January 1st, 1873, to January 1st, 1874, $37,765 15—from January 1st, 1874, 'to January 1st, 1875, $54,826 00—from January 1st, 1875, to January 1st, 1876, $50,459 00; and that the expenditures were, from August 8th, 1872, to January 1st, 1873, $20,954 50—from January 1st, 1873, to January 1st, 1874, $38,534 25—from January 1st, 1874, to January 1st, 1875, $53,243 78—from January 1st, 1875, to January 1st, 1876, $51,114 04; and that he has not taken any testimony or made any examination as to the propriety or necessity of the various items of expenditure charged, for the reason that the question meets him in limine, whether the shipping commissioner is "authorized, under the act of congress which creates his office, to apply to the payment of rent, clerk hire and the other necessary expenses thereof, the fees by him received in excess of the sum of $5,000," or whether all of the expenses necessarily incident to the conduct of his office are "to be paid out of the sum of $5,000 which the act gives him as his salary or compensation." The master also reports, that the only provisions of law which he has been able to find relating to the question are in title 53 of the Revised Statutes of the United States (chapter 1. §§ 4505, 4507, 4594); and that, therefore, before making any further investigation into, or report upon, the shipping commissioner's accounts, he submits to the court for interpretation the sections above mentioned, that he may then, if required, proceed further, in the light of its decision.

The shipping commissioner for the port of New York was appointed under the provisions of the act of June 7, 1872 (17 Stat. 262), entitled "An act to authorize the appointment of shipping commissioners by the several circuit courts of the United States, to superintend the shipping and discharge of seamen engaged in merchant ships belonging to the United States, and for the further protection of seamen." The 1st section of that act provides, that "the several circuit courts of the United States, in which circuits there is a seaport or seaports for entry, shall appoint a commissioner for such seaport within their respective circuits, as, in their judgment, may require the same, and which shall also be ports of ocean navigation; such commissioners to be termed 'shipping commissioners;' and may, from time to time, remove from office any of the said commissioners whom it may have reason to believe does not properly perform his duties; and shall provide for the proper performance of such duties until another person is duly appointed in his place; shall regulate the mode of conducting business in the shipping offices to be established by the shipping commissioners, as hereinafter provided; and shall have full and complete control over the same, subject to the provisions herein contained." The provisions of such 1st section are now to be found in section 4501 of the Revised Statutes. Under these provisions the present shipping commissioner for the port of New York was duly appointed in July, 1872, by the circuit court of the United States for the Southern district of New York.

The 2d section of the act requires, that "every shipping commissioner so appointed shall enter into bonds to the United States, conditioned for the faithful performance of the duties required in his office," and that he shall take and subscribe, "before entering upon the duties of his office," an oath, the form of which is set forth in the section, and which is an oath that he will "support the constitution of the United States," and "truly and faithfully discharge the duties of a shipping commissioner," to the best of his ability and according to law. The commissioner in question gave such bond and took such oath. The provisions of such 2d section are now to be found in section 4502 of the Revised Statutes.

The 3d section of the act provides, that "every shipping commissioner may engage a clerk or clerks to assist him in the transaction of the business of the shipping office, at his own proper cost, and may, in case of necessity, depute such clerk or clerks to act for him in his official capacity; but the shipping commissioner shall be held responsible for the acts of every such clerk or deputy, and will be personally liable for any penalties such clerk or deputy may incur by the

violation of any of the provisions of this act; and all acts done by a clerk, as such deputy, shall be as valid and binding as if done by the shipping commissioner. Each shipping commissioner shall provide a seal with which he shall authenticate all his official acts, on which seal shall be engraved the arms of the United States and the name of the seaport or district for which he is commissioned. Any instrument, either printed or written, purporting to be the official act of a shipping commissioner, and purporting to be under the seal and signature of such shipping commissioner, shall be received as prima facie evidence of the official character of such instrument, and of the truth of the facts therein set forth." The provisions of such 3d section are now to be found in sections 4505 and 4506 of the Revised Statutes.

The 4th section of the act provides, that "every shipping commissioner shall lease, rent, or procure, at his own cost, suitable premises for the transaction of business, and for the preservation of the books and other documents connected therewith, and which premises shall be styled 'the shipping commissioner's office.' And the general business of a shipping commissioner shall be, first, to afford facilities for engaging seamen, by keeping a register of their names and characters; secondly, to superintend their engagement and discharge, in manner hereinafter metioned; thirdly, to provide means for securing the presence on board at the proper times of men who are so engaged; fourthly, to facilitate the making of apprenticeships to the sea service: and to perform such other duties relating to merchant seamen and merchant ships as are hereby, or may hereafter, under the powers herein contained, be committed to him." The provisions of such 4th section are now to be found in sections 4507 and 4508 of the Revised Statutes.

The 5th section of the act provides, that "such fees, not exceeding the sums specified in the table marked 'A,' in the schedule hereto annexed, shall be payable upon all engagements and discharges effected before shipping commissioners as hereinafter mentioned, and such shipping commissioners shall cause a scale of the fees payable to be prepared, and to be conspicuously placed in the shipping office; and the shipping commissioner may refuse to proceed with any engagement or discharge, unless the fees payable thereon are first paid." Table A in the schedule is as follows: "Scale of fees for matters transacted at shipping commissioners' offices: First. Fee payable on engaging crew, for each member of the crew, (except apprentices,) $2 00. Secondly. Fee payable on discharging crew, for each member of crew discharged, 50 cents." The provisions of such 5th section and table A are now to be found in section 4592, and table C in the schedule annexed to title 53 of the Revised Statutes.

The 6th section of the act provides, that "every owner, consignee, agent, or master of a ship, engaging or discharging any seamen or seaman in a shipping office, or before a shipping commissioner, shall pay to the shipping commissioner the whole of the fees hereby made payable in respect of such engagement or discharge, and may, for the purpose of in part reimbursing himself, deduct, in respect of each such engagement or discharge, from the wages of all persons (except apprentices) so engaged or discharged, and retain, any sums not exceeding the sums specified in that behalf in the table marked 'B' in the schedule hereto annexed." Table B in the schedule is as follows: "Sums to be deducted from wages of seamen in the partial repayment of the fees payable in table A: In respect of engagements, from the wages of each member of the crew, 25 cents. In respect of discharges, from the wages of each member of the crew, 25 cents." The provisions of such 6th section and table B are now to be found in section 4593, and table E in the schedule annexed to title 53 of the Revised Statutes.

Section 7 of the act provides, that "any shipping commissioner, or any clerk or employee in any shipping office, who shall demand or receive any remuneration whatever, either directly or indirectly, for hiring or supplying any seaman for any merchant ships, excepting the lawful fees payable under this act, shall, for every such offence, incur a penalty not exceeding two hundred dollars." The provisions of such 6th section are now to be found in section 4595 of the Revised Statutes.

The act then goes on to prescribe, in a large number of sections, the details of the business of the shipping commissioner, being details of the general business mentioned in the 4th section of the act. The commissioner is required to aid in apprenticing boys to the sea service, receiving a fee of $5 from the master or owner for each boy bound, including the indenture; to see that shipping agreements are signed in his presence; to see that seamen are discharged, and their wages are paid, in his presence; to make awards between master and seaman, on matters submitted to him; to examine as to provisions and water on board of vessels; and to take charge of the effects and wages of deceased seamen.

The 66th section of the act then provides as follows: "That in no case shall the salary, fees, and emoluments of any officer appointed under this act be more than five thousand dollars per annum; and any additional fees shall be paid into the treasury of the United States." The provisions of such 66th section are now to be found in section 4594 of the Revised Statutes.

It is apparent that the principal scheme of the act in question was to provide a system of engaging and discharging seamen, under

the supervision of a shipping commissioner, which should afford protection to seamen, and facilities to masters and owners of vessels. It provides for written shipping articles to be signed by all seamen in the presence of a shipping commissioner; that wages shall be advanced to seamen only in the presence of the shipping commissioner; and that, at the end of a voyage, a seaman shall be discharged and paid off only in the presence of the shipping commissioner. For the shipping and the discharge of seamen the fees above named are to be paid by the owner or master of the vessel to the shipping commissioner, who is to keep them, and one-eighth of the shipping fees and one-half of the discharging fees are to be retained by the master or owner out of the wages of the seaman. In return for so much of the fees as the master or owner does not get back from the seaman, facilities for procuring seamen are furnished by the shipping commissioner in the register he is to keep of the names and characters of seamen, and in the means he is required to provide for securing the presence on board of vessels, at the proper time, of seamen for whom he makes engagements. In return for so much of the fees as the seaman pays, he has the protection afforded by the various provisions of the statute. The statute also contemplates that clerks may be necessary to assist the shipping commissioner in the transaction of the business of the shipping office; that such clerks are to be paid; that suitable premises for the transaction of the business of the office, and for the preservation of the books and other documents connected therewith, are to be leased, rented, or procured; that the expense of such premises is to be paid for; that registers of the names and characters of seamen are to be kept; that a register of indentures of apprenticeship is to be kept; and that various documents and certificates may be necessary to be prepared and given by the shipping commissioner. As the statute provides that "the salary, fees, and emoluments" of any officer appointed under it shall not be more than $5,000 per annum, and that "any additional fees shall be paid into the treasury of the United States," it is contended, on the part of the United States, that the shipping commissioner must pay into the treasury of the United States all fees received by him in excess of the sum of $5,000, and must, therefore, pay out of such sum of $5,000 all the expenses of his office, for clerk hire and rent of premises, and other matters. It is further contended that this view is fortified by the provision in section 3 of the act, that the commissioner may engage clerks "at his own proper costs," and by the provision in section 4 of the act, that he shall lease, rent, or procure premises, "at his own cost."

The act, as passed, provides, in its first 65 sections, for the performance of certain duties by the shipping commissioner and for the taking by him of certain fees for the performance of some of those duties. Many duties are prescribed to be performed by him for which no specific fee is to be paid. The only fees to be paid to him are for engaging and discharging seamen and for apprenticing boys. So far as the first 65 sections are concerned, he may retain all of those fees. If he does, as he must have clerks and an office and books and printed blanks, and make other expenditures in discharging properly the duties imposed on him by the act, he must pay for these things out of such fees, and only the surplus left can go to him as salary or emolument. If the fees are not sufficient to pay for these things, not only will he have no emolument, but he must, in addition, pay for these things out of other resources, if he has and provides for these things. It is meaningless to say to him, in the statute, that, as between himself and the fees, he may pay for these things out of the fees or out of his private resources other than the fees. He could do so, without the statute. The true meaning of the provisions as to "his own proper cost" and "his own cost" is this: The United States were creating an office and providing for the appointment of an officer, who was to be an officer of the United States, appointed by a court of law, within the provision of subdivision 2 of section 2 of article 2 of the constitution, and to give a bond to the United States, and to take an oath of office, and have a seal engraved with the arms of the United States. Duties were imposed upon such officer of such a character as to make it necessary that he should have a permanent place of business, with clerks therein, and books of record open to be consulted at all times. It would, therefore, seem proper that the United States should pay out of the treasury the salary of the officer, and the expense of clerks and premises and books. Instead of that, a system of fees is established, which fees the officer is to receive, and it is provided that the officer shall, at his own cost, as such officer, having such fees of office, pay out of such fees, which otherwise would be his own, the expenses referred to, and that such expenses shall not be a charge on the treasury of the United States. As regards such treasury, such expenses are at the proper cost of the office and of the officer, if they are paid out of the fees of the office. The commissioner must, indeed, see to it that the expenses do not exceed the fees; because, as to any such excess, no claim can exist against the United States. Congress had prescribed fixed fees, and no compensation beyond such fees and no other fees than those prescribed were authorized. Yet, it might happen that the fees would amount to such a sum over the expenses as to leave an improperly large surplus as emolument to the commissioner. Hence, at the close of the act, it is provided, in the 66th section, that the salary, fees and emoluments of any commissioner shall not be more than $5,000 per annum, and that any surplus beyond that sum shall be paid into the treasury of the

United States. Unless it be the proper construction of the act, that the expenses are first to come out of the fees, and that then the commissioner is to be allowed to retain, as his emolument, $5,000 per annum out of the fees, and that then any of the fees which remain are to be paid into the treasury, it follows, that the only proper construction of the 66th section must be, that, when the commissioner has received fees up to the amount of $5,000, he must pay into the treasury the fees thereafter received. This would, in respect to the aggregate amount of fees set forth in the report of the master as received by the commissioner from August 8th, 1872, to January 1st, 1876, namely, $163,353 65, require the payment into the treasury of probably over $145,000, while the commissioner would probably have nothing for his own emolument. Certainly, in every seaport where the duties of the commissioner are onerous, he would have less compensation than in a seaport where his duties are light. Such results would, of course, render the act wholly inoperative. A construction which would lead to such results ought not to be adopted unless it is clear that no other construction is possible. The construction contended for on the part of the United States would defeat the plain intention of the statute. Well settled principles in the construction of statutes have established the propositions, that a thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter; and that a thing which is in the letter of a statute, is not within the statute, unless it be within the intention of the makers. The act in question is not a revenue law. There is in it no intention manifested to raise any revenue for the United States out of the fees to be paid under it. It is entirely consistent with its scope and purpose, that congress designed that the system established by it should be self-sustaining as to expenses and emoluments, and that any surplus thereafter of fees should be paid into the treasury, in order that congress might, in view of the amount, if any, of such surplus, so readjust the fees as to make the system no more than self-sustaining.

It follows, that the proper construction of the provisions referred to is, that the shipping commissioner is authorized to apply to the payment of necessary and proper rent, clerk hire and other expenses, the fees received by him, and that such expenses are not to be paid out of the sum which the statute allows for his salary or emolument. Of course, the question of the necessity and propriety of any payments made by him for such expenses is one not now considered, but it is one to be considered by the master and reported upon by him and finally determined by the court, under the general power of regulation and control given to it by the 1st section of the act.

An order will be entered to the above effect, to be settled on notice.

JOHNSON, Circuit Judge. I concur in the opinion of Judge BLATCHFORD.